E-FILED
Thursday, 11 March, 2021  10:34:36 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| RONALD WALKER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-04014-CSB |
| | ) | |
| GREGG SCOTT, et al., | ) | |
| Defendants. | ) | |

### SUMMARY JUDGMENT ORDER

**COLIN STIRLING BRUCE, United States District Judge:**

Plaintiff *pro se* Ronald Walker, who is civilly committed at the Illinois Department of Human Services Treatment and Detention Facility ("TDF") under Illinois' Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq.*, filed suit under 42 U.S.C. § 1983. The Court screened his amended complaint under 28 U.S.C. § 1915A and determined that he stated First Amendment discrimination and freedom of expressive association claims.

Before the Court are motions for summary judgment filed by Defendants Mara Sheldon and Sandra Simpson [38] and Joshua Billingsley, Erik Kunkel, Dora Lucas, Gregg Scott, and Lynne Shelton [44]. Plaintiff has responded [49, 50], and Sheldon and Simpson have replied [52].

### I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a

material dispute through specific cites to admissible evidence or by showing that the

nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R.

Civ. P. 56(c)(1). "If the moving party has properly supported his motion, the burden

shifts to the non-moving party to come forward with specific facts showing that there is

a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

The nonmovant may not rest on his or her allegations in the complaint but

instead must point to admissible evidence in the record to show that a genuine dispute

exists. *Id.* "Conclusory allegations, unsupported by specific facts will not suffice."

*Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "A dispute is 'genuine' if

the evidence is such that a reasonable jury could return a verdict for the non[-]moving

party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986)). In making that decision, the Court construes all facts and

reasonable inferences drawn in the light most favorable to the nonmovant. *Ogden v.

Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

## II. BACKGROUND

On August 10, 2018, Defendant Kunkel issued Memorandum ("memo") 29R-18

under TDF's letterhead. The memo stated that "effective October 1, 2018, the approved

food vendor for holiday celebrations is Aramark." (ECF 9-1: p. 1.) On February 25, 2019,

Kunkel issued Memo 09R-19, which attached a "standardized menu … for use by all

religious groups for their approved feasts." (9-2: p. 3.) The memo prohibited changes or

substitutions to the listed menu items. (*Id.*) In his amended complaint, Plaintiff alleged

that despite the published policy, the Jewish community purchased "Kosher food for

2

their religious celebrations from an outside vendor while limiting the Muslim community to buying food from the standardized menu for their celebration following Ramadan." (9: pp. 6-7.)

Plaintiff also alleged that TDF's "Religious Committee," whose members Plaintiff identifies as Defendants Billingsley, Kunkel, Lucas, Scott, Sheldon, Shelton, and Simpson, had "taken it upon itself to decide who may come to and attend the Ramadan feast." (9: p. 8:9-10.) Plaintiff claims the committee mandated that the Muslim community invite several residents who have not (1) attended Muslim services, (2) participated in the fasting, or (3) donated funds for the expenses of the 2019 feast following Ramadan. Plaintiff adds that the mandated attendees made lifestyle choices that make it impossible for him to gather for the feast lest he becomes a "transgressor of the laws and tradition" of his faith. (*Id*. p. 9:10.)

The Court determined that Plaintiff sufficiently stated a First Amendment religious discrimination claim against Defendant Kunkel for not applying the policy to all religious faiths. The Court also decided that Plaintiff stated a First Amendment expressive association claim against Defendants Billingsley, Kunkel, Lucas, Scott, Sheldon, Shelton, and Simpson for mandating the inclusion of residents Plaintiff asserted did not practice the Muslim faith in their religious celebration.

### III. MATERIAL FACTS

#### A. Discrimination

Plaintiff bases his discrimination claim against Defendant Kunkel on conversations with other residents. (44-1: p. 98:11-17.) Plaintiff explained that Jewish

3

residents told him that their Rabbi provided several food trays for their ceremonies that were not purchased from Aramark. (*Id*. p. 98:15-21.) Plaintiff does not recall the Jewish residents who told him this information, when the food was ordered, or when the Rabbi delivered the food. (*Id*. pp. 99:4-6, 100:24, 101:1-2.)

Plaintiff recalled that food was provided for a Jewish celebration that occurred after October 18, 2018. (*Id*. p. 99:1-3.) Plaintiff does not know whether that food was ordered or purchased before October 1, 2018, the effective date of Memo 29R-18. (*Id*. p. 99:10-13.) Plaintiff could not confirm whether a Jewish resident ordered food from an outside vendor after October 1, 2018. (*Id*. p. 105:3-10.) Plaintiff confirmed that he had no other evidentiary basis for his discrimination claim against Kunkel. (*Id*. pp. 105:18-24, 106:1-2.) Memo 29R-18 did not prohibit any resident from receipt of food ordered from outside providers before October 1, 2018. (*Id*. p. 103:2-7.)

### B. Expressive Association

Plaintiff's expressive association claim against Defendants Billingsley, Kunkel, Lucas, Scott, Sheldon, Shelton, and Simpson arise from their roles as TDF Religious Committee members and concern a listing of TDF residents that were authorized to participate in the feast following Ramadan.[1] (*Id*. pp. 11:11-15, 13:13-24, 14:1-6.)

Plaintiff acknowledged that TDF rules mandate residents who desire to attend a religious event must state their intent by filling out a request form. (38-2: pp. 6-7:M; 44-1: p. 29: 13-23.) Completed forms are sent to the Religious Committee Coordinator,

---

[1] "Ramadan, a holy month in which practicing Muslims fast from dawn to sunset … ends with Eid al-Fitr, a celebration traditionally consisting of special prayers and a feast." *Hambright v. Kemper*, 705 F. App'x 461, 461 (7th Cir 2017).

4

Defendant Shelton. On May 23, 2019, Shelton sent an e-mail titled "Muslin Ramadan Services." (88-2: pp. 4-5.) Shelton explained that the Muslim faith was conducting a service on June 4, 2019, from 9 to 11 am. for Eid-al-Fitr. Shelton's e-mail requested that staff members allow a listing of residents to attend the Night of Power and the Eid-al-Fitr "if they choose." (*Id*. p. 4.) A listing of thirty-four residents followed.

Plaintiff sued Defendants based on his belief that TDF should have prevented residents who failed to follow the Quran's tenets from attending the feast. (*Id*. pp. 12:8-18, 19:13-20, 20:8-18.) To determine which tenets of the Quran to enforce, Plaintiff suggested that TDF officials confer with a Muslim resident, such as himself, to ascertain the standards of how a Ramadan feast has been traditionally held. (*Id*. p. 19:24-20:6.) Plaintiff interprets the Quran as requiring all Muslims to join the Muslim community, attend services, and participate in Ramadan. (*Id*. p. 21:4-13.) Plaintiff believes that a failure to participate in the above activities suggests that a person is not a Muslim. (*Id*. p. 21:14-16.) Plaintiff admits that another TDF resident is the acting Imam for the Muslim residents at TDF. (*Id*. p. 22:19-24.)

Plaintiff admitted that a resident does not have to be Muslim to come to the feast but then asserted that he wanted to keep certain people away "because they did not practice" Muslim activities such as fasting, praying, attending services, or contributing. (*Id*. p. 24:8-24.) Plaintiff identified seven or eight residents listed that he believed did not qualify to be at the feast according to the Quran's tenets. (*Id*. p. 25:5-11.) Plaintiff explained that these individuals stopped going to services, were consuming pork, or engaging in behaviors unbecoming of a Muslim. (*Id*. p. 25:12-18.) Plaintiff added, "I

believe they did not follow the [tenets] of the Quran, which automatically eliminates them from participating in Ramadan." (*Id*. p. 26:18-20.)

Plaintiff acknowledged that TDF rules require residents to fill out a form to request being added to the movement list to participate in religious services. (38-2: p. 29:8-23). Plaintiff states that all TDF residents are aware of this requirement. (*Id*. pp. 29:24-30:1-5.) TDF's Religious Committee neither requires residents to attend religious events nor bans them because they do not follow a religion's tenets. (*Id*. p. 2:15-16.) Plaintiff did not know whether the residents he wanted to be banned from the 2019 celebration submitted the required forms to be placed on the list. (*Id*. p. 28:2-12.)

Plaintiff agreed that the listed residents he objected to did not attend the June 2019 feast because it did not occur. (44-1: p. 14:14-19.) Plaintiff claimed that he was denied the right to have the feast because he "was not allowed to order the things we need for the feast or arrange the feast in a traditional manner." (*Id*. pp. 14:20-24, 15:1-7.) Plaintiff acknowledged that the provided menu did include some items that could have been ordered for the feast if they were prepared properly. (*Id*. pp. 38:20-24, 39:1-3, 16.) Plaintiff has never spoken to Defendants or received any documentation from the Religious Committee. (*Id*. pp. 41:15, 42:18.)

## IV. ANALYSIS

### A. Plaintiff's Religious Committee Claim

"The Free Exercise Clause prohibits the state from imposing a 'substantial burden' on a 'central religious belief or practice.'" *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (quoting *Kaufman v. McCaughtry*, 419 F.3d 678, 682–83 (7th Cir. 2005)). To

prevail on a First Amendment free exercise claim, a plaintiff must "submit evidence from which a jury could reasonably find that the defendants personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). "A substantial burden '[p]uts substantial pressure on an adherent to modify his behavior and violate his beliefs." *Id.* (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 717-18 (1981); *see also Kaufman*, 419 F.3d at 683 ("In the context of the Free Exercise Clause, [a plaintiff] must first establish that his right to practice [his religion] was burdened in a significant way.")

As earlier noted, Plaintiff's amended complaint alleged that Defendants Billingsley, Kunkel, Lucas, Scott, Sheldon, Shelton, and Simpson, as TDF Religious Committee members, mandated that the Muslim community invite several residents to their feast following Ramadan. Plaintiff objected to the committee's decision because those attendees either did not actively practice the Muslim faith or made lifestyle choices inconsistent with the Quran's teachings.

Defendants Billingsley, Kunkel, Lucas, Scott, Sheldon, Shelton, and Simpson contend that they are entitled to summary judgment because Plaintiff does not produce any evidence that the Religious Committee mandated the attendance of TDF residents at the July 2019 feast. Additionally, Defendants assert that the claimed mandate could not have placed a substantial burden on Plaintiff's religious practices because the 2019 feast did not occur. The Court agrees.

"For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v.*

*Kallas*, 895 F.3d 492, 498 (7th Cir. 2018).

The only admissible evidence supporting Plaintiff's claim is the May 2019 e-mail authored by Defendant Shelton as Religious Committee Coordinator. Therein, Shelton requested TDF officials permit the listed attendees to travel to the feast on June 4, 2019, if they desired. Plaintiff admits that he has no other correspondences from the Religious Committee regarding his claim. Even if  Plaintiff had admissible evidence showing that the Religious Committee ordered the attendance of residents at the July 2019 feast, on this record, he could not establish that he was harmed in any way because Plaintiff admits that the 2019 feast did not occur. *See Garza v. Henderson*, 779 F.2d 390, 395 (7th Cir. 1985) ("As in a common law tort action, the plaintiff in a civil rights tort action bears the burden of establishing that the defendant owed the plaintiff a duty, that the defendant breached his duties to the plaintiff, and that this breach caused the plaintiff actual damages.").

The Court notes that during his deposition and in his response to Defendants' summary judgment motion, Plaintiff argues that the TDF should take affirmative measures to understand the Quran's teachings and impose them as Plaintiff suggests. However, this distinctly different claim is not before the Court, and Plaintiff cannot amend his complaint through his response to Defendants' dispositive motion. *See Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) ("[A] party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment.") (quoting *Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014)).

## B. Plaintiff's Discrimination Claim

Prison officials may not discriminate based on religion "except to the extent required by the needs of prison administration." *Garner v. Muenchow*, 715 F. App'x 533, 537 (7th Cir. 2017). "Nondiscrimination means that the officials must respect the religious needs of inmates belonging to minority or non-traditional religions to the same degree as those belonging to larger and more traditional denominations." *Garner*, 715 F. App'x at 537. In the summary judgment context, a plaintiff must provide evidence showing that "the government favors one religion over another (or religion over nonreligion) without a legitimate secular reason for doing so." *Kaufman*, 733 F.3d at 696; *see also Maddox v. Love*, 655 F.3d 709, 719 (7th Cir. 2011) (holding that prison officials may not deny a prisoner "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts").

Defendant Kunkel asserts that he is entitled to summary judgment because Plaintiff does not produce any evidence that he discriminated as Plaintiff alleges. Plaintiff's evidence of Defendant Kunkle discrimination consists of the following: (1) hearsay conversations with other residents Plaintiff cannot identify, (2) unestablished dates regarding the ordering and delivery of food to the Jewish community, (3) his belief that a Rabbi provided food to the Jewish community at TDF, which Plaintiff does not allege was caused by any decision Kunkel made and is not affected by the plain language of the enacted policy.

Plaintiff recalls that food was provided for a Jewish celebration after October 18, 2018, but admitted that he could not establish if the food was ordered or purchased before October 1, 2018, the policy's effective date.

In his response, Plaintiff claims that a genuine issue of material fact exists based on the evidence he has already presented, which at the time of trial "will include members of the Jewish community…." (50: p. 8.) At this stage, however, "[t]he parties are required to put their evidentiary cards on the table, and if that evidence shows that there is no genuine issue of material fact, the court is entitled to resolve the case without a trial." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017); *see also Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) ("As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.") (citation and quotation marks omitted).

Despite naming Defendant Kunkel, Plaintiff offers no evidence that Defendant Kunkle approved or permitted any religious organization to disregard the policy after its effective date. Moreover, Plaintiff's claim that the Jewish community circumvented the policy is based on inadmissible hearsay from sources Plaintiff cannot identify. Inferences that are supported by speculation, as in this case, will not defeat a summary judgment motion. *See Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) ("Inferences that rely upon speculation or conjecture are insufficient."); *see also Davis v. Carter*, 452

4:19-cv-04014-CSB   # 55   Page 11 of 11

F.3d 686, 697 (7th Cir. 2006) ("[W]hen the evidence provides for only speculation or

guessing, summary judgment is appropriate.").

**IT IS THEREFORE ORDERED**:

1) **The Court GRANTS Defendants' respective motions for summary judgment [38, 44] under Fed. R. Civ. P. 56. The Court directs the Clerk of the Court to enter judgment in favor of Defendants and against Plaintiff. This case is terminated, with the parties to bear their own costs. All deadlines and internal settings are vacated. Plaintiff remains responsible for the $350 reduced filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* MUST identify the issues the Plaintiff will present on appeal to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be allowed to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good-faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome.**

Entered March 11, 2020.


s/ Colin S. Bruce
_____
**COLIN STIRLING BRUCE**
**UNITED STATES DISTRICT JUDGE**